**NOT FOR PUBLICATION**

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

RHONDA HOBSON,

    Plaintiff,

v.

MSO ISAAC TREMMEL, *et al.*,

    Defendants.

Civil Action No. 11-4590 (MAS) (LHG)

**MEMORANDUM OPINION**

## SHIPP, District Judge

This matter comes before the Court upon Defendants Ann Klein Forensic Center ("AKFC"), Isaac Trammell,[1] Judy Crawford, and Marion Watkins' ("Defendants") Motion for Summary Judgment. (Defs.' Br., ECF No. 30-4.) Plaintiff Rhonda Hobson ("Plaintiff") filed Opposition to the Motion. (Pl.'s Opp'n, ECF No. 36.) Defendants filed a Reply. (Defs.' Reply, ECF No. 38.) The Court has carefully considered the Parties' submissions and decided the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons stated below, and other good cause shown, Defendants' Motion for Summary Judgment is GRANTED.

## I. Background

### A. Undisputed Material Facts

Notably, the material facts in the instant case are undisputed. (Pl.'s SUMF, ECF No. 36-1.) Specifically, "Plaintiff accepts Defendant's recitation of undisputed material facts since the

---

[1] Apparently, the Defendant's name is misspelled in the caption. Accordingly, this Defendant will be referred to as Trammell in the instant Opinion. (*See* Defs.' Br. 1.)

same is based upon documents and testimony of depositions in this matter." (*Id.* at 2.)[2] Accordingly, the undisputed material facts are as follows. Plaintiff worked as a Charge Nurse at the Ann Klein Forensic Center since January 2006. (Defs.' SUMF, ECF No. 30-3 ¶ 3.) Plaintiff worked in the Alternate Workweek Program ("AWP") since April 2006. (*Id.* ¶¶ 5-6.) This program called for nurses to work double shifts on a three-day work week schedule. (*Id.*) In December 2007, Plaintiff took a medical leave of absence. (*Id.* ¶ 7.) After six extensions, she returned in May 2008. (*Id.* ¶¶ 7-8.) Upon her return, she presented with a medical note stating that she should be assigned to the day shift. (*Id.* ¶ 8.) Accordingly, she was temporarily assigned to the day shift. (*Id.* ¶ 9.) On August 25, 2008, Plaintiff submitted a request for reasonable accommodation to be assigned to the day shift. (*Id.* ¶ 10.) In support of her request, she submitted documentation that she had a cardiac condition, which was "exacerbated by irregular sleep patterns and inadequate rest." (*Id.* ¶ 11.) AKFC engaged in the interactive process regarding accommodation, but did not offer a day shift position. (*Id.* ¶ 12.) However, AKFC offered plaintiff a five-day nursing position beginning from 2:45 p.m. and ending at 11:45 p.m. (*Id.* ¶ 13.) Plaintiff rejected this accommodation. (*Id.* ¶ 14.) In March 2009, Plaintiff contacted Human Resources and was informed that she had rejected the accommodation, and provided her with an "ADA package" which needed to be submitted delineating any change to her status with supporting medical documentation in order to receive further consideration for her requested reasonable accommodation. (*Id.* ¶¶ 15-16.)

On June 25, 2009, Plaintiff injured her back while at work resulting in her absence for two weeks. (*Id.* ¶¶ 17-19.) On January 25, 2010, Plaintiff again requested a reasonable

---

[2] Plaintiff's Response to Defendants' Statement of Material Facts and Supplemental Material Facts Not in Dispute, annexing additional details, is not paginated. Therefore, the Court will reference the ECF page numbers for purposes of clarity. (Pl.'s SUMF.)

accommodation. (*Id.* ¶ 20.) On February 9, 2010, she was again provided with an "ADA package." (*Id.* ¶ 21.)

In 2006, Plaintiff states that on less than five occasions, Trammell made sexual gestures by getting close to her face. (*Id.* ¶¶ 32-34). This behavior was not reported. (*Id.* ¶ 34.) Prior to February 17, 2010, Trammell allegedly asked the Plaintiff out on one or two occasions. (*Id.* ¶ 27.) This, similarly, was not reported. (*Id.* ¶ 28.) Also prior to February 17, 2010, Trammell allegedly picked up the Plaintiff as she was trying to get out of the door of the team room. (*Id.* ¶ 29.) Plaintiff reported this incident to a co-worker, but not a supervisor. (*Id.* ¶ 31.) Plaintiff does not recall Trammell making any sexual remarks or using abusive language. (*Id.* ¶ 35.)

On February 17, 2010 Plaintiff alleges that she was assaulted by Isaac Trammell, a Medical Security Officer ("MSO"). (*Id.* ¶ 22.) Plaintiff further alleges she was subjected to "unwanted sexual remarks, touching, abusive language and gestures of a sexual nature" from Trammell. (*Id.* ¶ 23.) Additionally, Plaintiff asserts claims that Trammell leered at her. (*Id.* ¶ 24.) The alleged leering was not reported to supervisors. (*Id.* ¶ 26.) The February 17, 2010 incident allegedly took place in a control room, referred to as a "bubble" because it is enclosed by glass on all sides. (*Id.* ¶¶ 38-39.) Plaintiff's specific allegation is that Trammell grabbed her, pinned her arms to her side, bent her over a ledge and laid on top of her. (*Id.* ¶¶ 41-42.) Another MSO, Brenda Randall, who Trammell happened to have been dating, was present for the incident. (*Id.* ¶¶ 46-48.) According to Plaintiff, Randall left the room, closed the door, and watched the incident through the window in the door. (*Id.* ¶ 50.) Plaintiff reported the incident. (*Id.* ¶¶ 52-55.) Statements were taken from those involved, and ultimately forwarded to the Equal Employment Office ("EEO"). (*Id.* ¶¶ 52-74.) Trammell was instructed not to contact the Plaintiff. (*Id.* ¶ 76.)

At the time of the incident, Mr. Watkins served as the Director of Medical Security. (*Id.* ¶ 83.) He was on medical leave from February 23, 2010 through May 2010, and subsequently retired. (*Id.* ¶¶ 84-88.) Due to his leave and since the incident was not reported to him, he has limited knowledge regarding the incident. (*Id.*)

The individual Parties involved received training in EEO policy. (*Id.* ¶¶ 96-98.) Plaintiff's complaint was forwarded to the Department of Human Services ("DHS") police, as a result of the potential criminality of the conduct alleged. (*Id.* ¶ 101.) The DHS police investigation took place prior to the EEO investigation. (*Id.* ¶ 102.) During the investigation, Trammell was to have no contact with Plaintiff. (*Id.* ¶ 107.) However, Plaintiff alleges three incidences of contact, specifically in the form of "leering" and "staring" in the hall. (*Id.* ¶¶ 108-109.) She reported these incidents to Ramona Harris, her supervisor, who instructed her to stay in the nursing area. (*Id.* ¶ 111.) The DHS police investigation concluded on April 1, 2011. (*Id.* ¶ 117.) On March 3, 2010, Plaintiff was involved in a car accident. (*Id.* ¶ 118.) She ceased attending work on April 4, 2010, without being on approved leave. (*Id.* ¶ 120.)

On May 3, 2010 Plaintiff requested a leave of absence, which AKFC extended five times. (*Id.* ¶¶ 121-122.) She never returned to work at AKFC. (*Id.* ¶ 123.)

The EEO investigation began after the DHS police closed its investigation. (*Id.* ¶ 124.) The EEO investigation took just over 30 days. (*Id.* ¶ 127.) The EEO was unable to corroborate Plaintiff's allegations. (*Id.* ¶¶ 134-135). Plaintiff filed a complaint with New Jersey Division of Civil Rights on February 17, 2010. (*Id.* ¶ 136.) Plaintiff never filed a complaint with the Equal Employment Opportunity Commission. (*Id.* ¶ 137.) On March 22, 2011, Plaintiff sought a transfer. (*Id.* ¶ 139.) On March 25, 2011, Plaintiff requested a reasonable accommodation

seeking transfer (*Id.* ¶ 141.) Plaintiff was transferred to Woodbridge Developmental Center effective July 13, 2011. (*Id.* ¶¶ 142-143.)

## II. Legal Standard

Summary judgment is appropriate if the record shows "that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A district court considers the facts drawn from the "materials in the record, including depositions, documents, electronically stored information, affidavits . . . or other materials" and must "view the inferences to be drawn from the underlying facts in the light most favorable to the party opposing the motion." Fed. R. Civ. P. 56(c)(1)(A); *Curley v. Klem*, 298 F.3d 271, 276-77 (3d Cir. 2002) (internal quotations omitted). The Court must determine "whether the evidence presents a sufficient disagreement to require submission to a [trier of fact] or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby*, 477 U.S. 242, 251-52 (1986). More precisely, summary judgment should be granted if the evidence available would not support a jury verdict in favor of the non-moving party. *Id.* at 248-49. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Id.* at 247-48.

## III. Analysis

### A. Plaintiff's Title VII Claims

#### 1. Parties' Positions

Defendants argue that Plaintiff's claims pursuant to Title VII are procedurally barred as a result of her failure to file a complaint with the EEOC. (Defs.' Br. 37-39.) Alternatively, Defendants argue that Plaintiff's Title VII claims are substantively deficient. (*Id.* at 39-41.)

Plaintiff argues that her failure to exhaust should be excused "as the polices [sic] and procedures manual coupled with the actions . . . of the E.E.O. were misleading[.]" (Pl.'s Opp'n 26.)

### 2. Analysis

"Title VII requires a claimant to file a charge with the EEOC within 300 days of the allegedly unlawful employment practice if the claimant has filed a parallel proceeding with a state agency." *Rosa v. Seiko Corp. of Am.*, No. 05-4406 (JLL), 2008 WL 229118, at *4 (D.N.J. Jan. 25, 2008) (internal citation omitted). Under Title VII, a charge shall be filed within 180 days after the alleged unlawful employment practice occurred, except where "the person aggrieved has initially instituted proceedings with a State or local agency . . . such charge shall be filed by or on behalf of the person aggrieved within three hundred days[.]" 42 U.S.C. § 2000e-5(e)(1). Neither the statute itself, nor the case law provided by Plaintiff, support the contention that in these circumstances the requirement that "[b]efore bringing suit under Title VII in federal court, a plaintiff must first file a charge with the EEOC" should be waived. *Webb v. City of Phila.*, 562 F.3d 256, 262 (3d Cir. 2009).

Plaintiff relies on *Ford v. Christiana Health Care Sys.*, 2009 WL 82710 (3d Cir. Jan. 14, 2009). Ironically, in *Ford*, "there was no dispute that [Plaintiff] did not exhaust her administrative remedies by filing a charge with the Equal Employment Opportunity Commission." *Id.* at *2. Furthermore, the Third Circuit noted that the Plaintiff did "not contest the District Court's conclusions regarding the failure to exhaust administrative remedies." *Id.* Plaintiff's only other legal support for excusing the failure to exhaust is a Seventh Circuit case discussing ERISA, wherein the court ultimately granted summary judgment to the defendants based on the plaintiff's failure to exhaust administrative remedies. (Pl.'s Opp'n 26) (citing

6

*Gallegos v. Mt. Sinai Med. Ctr. and Unum Life Ins. Co. of Am.*, 210 F.3d 803 (7th Cir. 2000)). Accordingly, Plaintiff's Title VII claims are dismissed with prejudice.

### B. Plaintiff's 1983 Claims Against AKFC

#### 1. Parties' Positions

Defendants argue that Defendant AKFC, as an arm of the New Jersey Department of Human Services, is entitled to Eleventh Amendment immunity. (Defs.' Br. 41-44; Defs.' Reply 16-17.) Plaintiff argues that Defendants have failed to provide adequate documentation in support of Eleventh Amendment immunity. (Pl.'s Opp'n 29.)

#### 2. Analysis

"[A]bsent a waiver of sovereign immunity, the Eleventh Amendment protects states, their agencies and departments, from suit in federal court regardless of the type of relief sought." *Brown ex rel. Payton v. Ancora Psychiatric Hosp.*, No. 11-7159 (RMB), 2012 WL 4857570, at *1 (D.N.J. Oct. 11, 2012). AKFC is not a "person" for purposes of liability. Section 1983 provides a cause of action against "every person" who deprives another of any rights, privileges or immunities secured by the Constitution. In general, a State and/or its agencies are not "person[s]" against whom a § 1983 claim can be asserted. *Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613, 617 (2002) (citing *Will v. Mich. Dept. of State Police*, 491 U.S. 58, 66 (1989)). AKFC is afforded Eleventh Amendment immunity since it is a state hospital created by statute. *See* N.J. Stat. Ann. 30:1-7. Accordingly, Plaintiff's § 1983 Claim against AKFC is DISMISSED with prejudice. Furthermore, "employees sued in their official capacity are also entitled to Eleventh Amendment immunity because official-capacity suits generally represent only another way of pleading an action against the state." *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 254. (3d Cir. 2010) (internal citation and quotations omitted). Thus, Plaintiff's

§ 1983 official capacity claims against the Individual Defendants are DISMISSED with prejudice.

### C. Plaintiff's Individual Capacity Claims

#### 1. Isaac Trammell

##### a. Parties' Positions

Plaintiff argues that Trammell is liable because he exercised supervisory responsibilities. (Pl.'s Opp'n 37.) However, Plaintiff's brief acknowledges that Trammell did not have "direct supervision over Plaintiff Hobson." *Id.* Defendants' argument, in sum, is that "there is no basis for liability against MSO Trammell because he was not [P]laintiff's supervisor." (Defs.' Reply 17.)

##### b. Analysis

Plaintiff relies upon *Zelinski v. Pennsylvania State Police* which, while persuasive and beneficial to the Court's analysis, does not advance Plaintiff's position. 108 F. App'x 700, 703 (3d Cir. 2004). In *Zelinski*, the court noted as an initial matter that "liability under 42 U.S.C. § 1983 requires that the defendant . . . exercised power . . . made possible only because the wrongdoer is clothed with the authority of state law." *Id.* (internal citation omitted). "Generally, in order to act under the color of state law, the wrongdoer must be in a supervisory position in relation to the plaintiff." *Id.* The Third Circuit ultimately held that the plaintiff offered "no evidence" that any "sexual harassment occurred at any time when [defendant] was in a supervisory position in relation to [plaintiff]." *Id.* Once it was determined that the defendant was not the plaintiff's formal supervisor, the *Zelinski* court then examined, "whether there was *de facto* supervisory control[,]" specifically: "1) whether the defendant could alter the plaintiff's

workload, and 2) whether the plaintiff would face charges of insubordination for failure to obey the defendant's order." *Id.*

In the instant action, Plaintiff readily admits that Trammell is not her supervisor. (Pl.'s Opp'n 37.) As it relates to whether Trammell had *de facto* supervisory authority, Plaintiff relies upon Trammell's job description as a Senior Medical Security Officer. (SMSO Description, ECF No. 36-7.) However, no language therein would convey that Trammell had supervisory authority over the Plaintiff. Specifically, Plaintiff relies on language in Trammell's job description, which included the following language:

> insures that MSO recruits complete assigned tasks; assumes responsibility for the physical well-being, care, and custody of the patients or residents in an assigned ward, building or area; provides a secure environment for patient care by maintaining patient or resident order and discipline within the hospital and on grounds; assists or takes the lead in assisting nursing staff in the care of patients or residents . . . ; takes the lead or participates in training activities as required; supervise or make counts of patients[.]

(Pl.'s Opp'n 37.)

The plain language does not support *de facto* supervisory authority. Construing the language in the light most favorable to Plaintiff, "assists or takes the lead in assisting" is insufficient to establish supervisory authority and the remainder of the quoted language does not reasonably touch upon the alleged authority Trammell exercised in relation to Plaintiff. Accordingly, summary judgment as to Trammell is GRANTED.

### 2. Judy Crawford & Marion Watkins

#### a. Parties' Positions

Plaintiff's Complaint alleges that "Defendant, Judy Crawford, Nursing Director, Individually and as Agent, Servant, and/or Employee of Defendant Ann Klein Forensic Center, and at all times material to this Complaint, has been a Nursing Director of said Defendant

9

employer." (Compl., Count 1, ¶ 7.) Further, "Defendant, Marion Watkins, Director of Medical Security, Individually, and as Agent, Servant, and/or Employee of Defendant Ann Klein Forensic Center, and at all times material to this Complaint, has been a director of Medical Security of said Defendant employer." (*Id.* ¶ 8.) In essence, Plaintiff alleges that Defendants Crawford and Watkins acquiesced in their subordinate, Trammell's, wrongful conduct. (Pl.'s Opp'n 38.) Specifically, Plaintiff's Opposition argues that the: "claims cannot be dismissed against Defendants, Judy Crawford or Marion Watkins, individually, since there are numerous undisputed material facts . . . which are evidence of 'aiding and abetting' and 'acquiescence' because of said supervisors' failure to take any action in light of Defendant, SMSO [Trammell]'s conduct." *Id.* Defendants' Motion for Summary Judgment argues that Crawford does not supervise Trammell and did not acquiesce in any alleged misconduct. (Defs.' Br. 46.) Further, Defendants assert that Watkins, due to his leave of absence, similarly could not have acquiesced. (*Id.*)

### b. Analysis

> Supervisory liability cannot be based solely upon the doctrine of *respondeat superior*, but there must be some affirmative conduct by the supervisor that played a role in the discrimination. The necessary involvement can be shown in two ways, either through allegations of personal direction or of actual knowledge and acquiescence, or through proof of direct discrimination by the supervisor. The existence of an order or acquiescence leading to discrimination must be pled and proven with appropriate specificity.

*Andrews v. City of Phila.*, 895 F.2d 1469, 1478 (3d Cir. 1990) (internal citation and quotations omitted).

The Complaint does not allege and the record does not reflect any affirmative conduct by Crawford or Watkins which could establish acquiescence or direct discrimination. Plaintiff alleges that Crawford "failed and refused to undertake action to prevent MSO Isaac [Trammell's] conduct against Plaintiff[.]" (Compl., Count 1, ¶ 14.) As an initial matter, Trammell as an

MSO, is not a subordinate of Crawford, whose responsibilities are with the nursing department. Further, Plaintiff "has failed to raise a genuine issue of material fact that [the] defendant[] . . . had personal knowledge or involvement in the alleged discrimination[.] *Santiago v. City of Vineland*, 107 F. Supp. 2d 512, 543 (D.N.J. 2000).

As it relates to Watkins, the undisputed facts show that he does not know the specifics of the incident underlying the Plaintiff's complaint, that the incident was not reported to him, and that he was out on medical leave shortly after the incident occurred. (Defs.' SUMF ¶¶ 84-88.) Accordingly, summary judgment is proper as the Plaintiff's Complaint and the undisputed material facts do not set forth any affirmative conduct executed by Watkins that furthered the alleged discrimination. "[U]nder the circumstances of this case, [Defendant's] non-involvement . . . insulates him from liability under § 1983." *Mobley v. City of Atl. City Police Dep't*, 89 F. Supp. 2d 533, 539 (D.N.J. 1999).

Finally, the record reflects that none of the individual defendants were policymakers. Specifically, they did not have the authority to establish or maintain, any policy, practices or customs. *See A.M. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572 (3d Cir. 2004.) In addition, the facts reflect that once notified of the February 17, 2010 alleged acts of discrimination, Defendants made reasonable efforts to separate Trammell from Plaintiff. Here, Plaintiff has failed to point to any facts which demonstrate that Defendants' acquiesced to the reported conduct. Accordingly, summary judgment is GRANTED.

### D. Plaintiff's Remaining State Law Claims[3]

This Court has granted Defendants summary judgment as to all of the alleged federal law claims, therefore only Plaintiff's state law claims remain. The Court declines to exercise pendent

---

[3] While 42 U.S.C. § 1981 is referenced in Plaintiff's Complaint, no factual assertions are made in connection with such a claim. (Compl., Count 1, ¶ 3.)

11

jurisdiction over Plaintiff's state law claims. *See Foster v. Twp. of Hillside*, 780 F. Supp. 1026, 1047 (D.N.J. 1992).

## III. Conclusion

After careful consideration, the Court finds that Defendants are entitled to summary judgment. For the reasons set forth above, and for other good cause shown, it is hereby ordered that Defendants' Motion for Summary Judgment is GRANTED. An order will be entered consistent with this Opinion.

*/s/ Michael A. Shipp*
**MICHAEL A. SHIPP**
**UNITED STATES DISTRICT JUDGE**

Dated: 7/30/13